Robert L. Liebross (RL2912)
LAW OFFICE OF ROBERT L. LIEBROSS
Attorney for Plaintiffs
39 Broadway, Suite 1620
New York, NY 10006
212-566-2151
rliebross@liebrosslaw.com          Civ. Action No.  18-cv-3114

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

MADELINE REED, RONALD SUMTER, AND STEPHANIE PEMBERTON, on behalf of themselves and all other similarly situated pension plan participants, and on behalf of the J-CAP PENSION PLAN,

      Plaintiffs,

v.

QUEENS VILLAGE COMMITTEE FOR MENTAL HEALTH FOR JAMAICA COMMUNITY ADOLESCENT PROGRAM, INC., Plan Administrator, The J-Cap Pension Plan; DIANE GONZALEZ, NILDA RUIZ, NANCY BRINN, Fiduciaries, The J-Cap Pension Plan,

      Defendants.

_____

# CLASS ACTION COMPLAINT UNDER ERISA FOR BREACH OF FIDUCIARY DUTY; INJUNCTIVE, AND OTHER REMEDIAL AND APPROPRIATE EQUITABLE RELIEF

_____

## PRELIMINARY  STATEMENT

1.     Plaintiffs' claims arise under ERISA, 29 U.S.C. § 1001 et seq.  The

plaintiffs are participants in the defined contribution pension plan (pension plan), that their employer, the Queens Village Committee for Mental Health for Jamaica Community Adolescent Program, Inc. (Queens Village), sponsored for its employees.  Queens Village also is the plan's administrator and named fiduciary.

2.      Queens Village states that it is a non-profit 501(c)(3) corporation primarily engaged in residential treatment programs in Jamaica, New York, for the treatment of drug and alcohol abusers.  Queens Village acquired land and constructed a residential treatment facility in Jamaica, Queens.

3.      Funds in the form of grants are received mainly from the New York State Office of Alcohol and Substance Abuse Services (OASAS), its main funding source.  Revenue also is received from welfare, other governmental agencies, private contributions, and from other sources.

4.      For the 2008-2010 pension plan years, the terms of the pension plan required Queens Village to contribute 7% of each participant's compensation (up to the social security earnings limit, and a higher percent of compensation for earnings above that limit) with Queens Village into the pension plan on their behalf, to be allocated to their individual accounts.   The OASAS grant provides some or all of the funding for the pension plan contributions that Queens Village estimated it would have to make each year.

2

5.     Queens Village failed to make any contributions into the pension plan for the 2008-2010 pension plan years.   For each of those plan years, Queens Village was required to contribute approximately $200,000 per year into the plan.

6.     On the pension plan's annual report to the U.S. Department of Labor (Form 5500 SF) for the 2009 plan year and for all subsequent pension plan years, Queens Village concealed its failure to make those required contributions.   The instructions for completing the annual report stated that contributions not made in one year had to be included as a required contribution on the report for the next plan year.  The requirement carried over until the money was paid into the pension plan.

7.     On the 5500 SF annual report for the 2009 plan year and for all subsequent plan years, Queens Village failed to list the contributions not made for the 2008, 2009, and 2010 plan years as a required contribution in each subsequent year.  Eligible participants in those plan years lost the unmade contributions and the earnings that timely contributions would have produced in their accounts.

8.     For some plan years after the 2010 plan year, Queens Village also failed to provide the Trustee with the information necessary to allow the Trustee to allocate whatever money was contributed into the plan to be allocated into the appropriate accounts in the pension plan, causing participants to lose earnings.

3

9.      Queens Village owed the pension plan a debt for failing to make its contractually required pension plan contributions.  The pension plan's right to collect on that debt is called a "chose in action" and is an asset of the pension plan. Rahm v. Halpin, 566 F.3d 286, 291 (2d Cir. 2009). When an employer fails to pay contributions into a plan and the plan's fiduciaries do not pursue the claim, the Secretary of Labor generally files suit against the plan's fiduciaries for failing to enforce the plan's rights against the employer.  Id., at 289-90.

10.      This civil action is brought by the named plaintiffs on behalf of themselves and all participants in the pension plan eligible for a contribution during the 2008, 2009 or 2010 plan years, and on behalf of the pension plan itself, against the plan's administrator and named fiduciary, the Queens Village Committee for Mental Health, and plan fiduciaries Diane Gonzalez, Nancy Brinn and Nilda Ruiz.

11.      ERISA section 502(a)(2), 29 U.S.C. §1132(a)(2), authorizes this action by the participants in a representative capacity against the plan fiduciaries. L.I. Head Start Child Development Services, Inc. v. Economic Opportunity Council of Suffolk, Inc., 710 F.3d 57, 65-66 (2d Cir. 2013).   The action by the participants for breach of fiduciary duty directly against named fiduciary Queens Village and plan fiduciaries Gonzales, Brinn and Ruiz is authorized by ERISA

4

section 502(a)(3), 29 U.S.C. §1132(a)(3).

12.    The Queens Village financial statements for its fiscal year ending on June 30, 2016, state that Queens  paid off the mortgage on the building or buildings in which it operates the residential treatment facility, that it took out in 1998.  These assets are worth millions of dollars.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction under ERISA section 502(e)(1), 29 U.S.C. § 1132(e)(1).  This is a complaint by pension plan participants alleging violations by pension plan fiduciaries of provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA").

14.    Venue is proper in this district, under ERISA section 502(e)(2), 29 U.S.C. § 1132(e)(2).  The Queens Village Committee for Mental Health operates the in-patient care facility at 116-30 Sutphin Blvd., Jamaica, New York 11434-1527, in this district; the Queens Village Committee is listed in the Pension Plan's Summary Plan Description as the Pension Plan Administrator, at this address, and the participants were employed at this address.  Breaches of fiduciary duty are alleged to have occurred in this district.

## THE PARTIES

15.    Plaintiff Madeline Reed was employed by Queens Village from 2004 through October, 2007 and then again from March, 2008 through December, 2015. She was employed first as an administrative assistant and then as a counselor to people with alcohol or drug addiction problems.  She is a vested participant in the pension plan.  She was entitled to a contribution to her account in the pension plan for the 2008-2010 plan years for her service with Queens Village during these years.   She has not received a contribution to her account in the plan for those plan years.

16.    Plaintiff Ronald Sumter worked approximately 20 years for Queens Village, from 1993 through August, 2014.  He was employed as a counselor to people with alcohol or drug addiction problems.  He is a vested participant in the pension plan. He was entitled to a contribution to his account in the pension plan for the 2008-2010 plan years for his service with Queens Village during those years.  He has not received a contribution to his account in the plan for those plan years.

17.    Plaintiff Stephanie Pemberton was employed by Queens Village as a counselor, and worked there from approximately 1996 through 2014.  She was vested in her benefits in the pension plan and was entitled to a contribution to her

account for the 2008-2010 plan years for her service with Queens Village during

those years.   She has not received a contribution to her account in the plan for

those plan years.

18.    The J-CAP Pension Plan is an employee pension benefit plan, within

the meaning of ERISA section 3(2)(A), 29 U.S.C. §1002 (2)(A), and a defined

contribution pension plan within the meaning of ERISA section 3(34), 29 U.S.C.

§1002 (34).

19.    Defendant Queens Village Committee for Mental Health for Jamaica

Community Adolescent Program, Inc. (Queens Village) states that it is a 501(c)(3)

non-profit corporation engaged primarily in residential treatment programs using

the therapeutic community model to treat drug and alcohol abuses in Queens

County, New York.   Queens Village's primary place of business is at 116-30

Sutphin Blvd., Jamaica, New York 11434-1527, and its mailing address and the

address of its chief executive officer Diane Gonzalez, and where its books are

kept, is 231-35 Merrick Boulevard, Laurelton, NY 11413.

20.    Queens Village sponsors an employee pension plan (J-Cap Pension

Plan), within the meaning of ERISA section 3(2)(A), 29 U.S.C. §1002(2)(A),  for

its employees.   The plan's summary plan description (SPD) states that Queens

Village is the plan administrator, within the meaning of ERISA section 3(16)(A),

29 U.S.C. §1002 (16)(A) and is responsible for directly administering the plan, and is responsible for the day-to-day administration and management of the plan. Queens Village has the discretionary authority to appoint other persons as may be necessary to act on its behalf or assist in performing these responsibilities. Queens Village is the named fiduciary of the pension plan, within the meaning of ERISA section 402(a)(2), 29 U.S.C. § 1102(a)(2).

21.    Defendant Diane Gonzalez is and has been, at all pertinent times, the Chief Executive Officer of Queens Village. As chief executive, she is responsible for supervising the management, administration and operation of the organization, and has the authority to manage the finances of the organization.

22.    Diane Gonzalez exercises authority and control over the pension plan asset consisting of the plan's chose in action (its right to payment of the debt that Queens Village owed the pension plan for the unpaid mandatory contributions).

23.    As chief executive, Gonzalez has the authority to determine and control, among other matters, whether and under what circumstances Queens Village, in its capacity as pension plan administrator and named fiduciary of the plan would manage or dispose of the plan asset consisting of its chose in action for the unpaid contributions by:

    a.    seeking to collect on the debt owed to the plan by employer-

plan sponsor  Queens Village for its unpaid contributions to the pension plan;

        b.     applying to a federal court for guidance on collecting the unpaid pension plan contributions; and

        c.     providing information to the plan trustee necessary for the plan trustee to determine how employer contributions to the pension plan should be allocated to the participants' individual accounts in the plan.

24.    Diane Gonzalez exercises control over whether conflicted fiduciary Queens Village applies to a federal court for guidance as to how it should exercise its fiduciary duty to collect on the debt that plan sponsor Queens Village, in its corporate capacity, owes the pension plan for the unpaid contributions and lost earnings.

25.    Diane Gonzalez has the authority, as chief executive officer of Queens Village, to determine which of Queens Village's creditors would be paid and in what order, and whether fiduciary Queens Village, at any time, would seek to enforce the plan's chose in action against Queens Village in its corporate capacity. She has the authority and responsibility to decide whether and under what circumstances Queens Village should obtain a mortgage on its real property in order to obtain the cash necessary for Queens Village to pay the debt it owes the pension plan for the unpaid contributions and earnings lost by the participants on

the unpaid contributions.

26.    Diane Gonzalez exercises discretionary authority or discretionary control respecting management of the pension plan in that she has the authority to determine the information that is provided to the plan trustee so that the trustee can allocate the yearly Queens Village contributions to the pension plan into the appropriate participant accounts in the plan.

27.    Diane Gonzalez is a fiduciary of the pension plan, within the meaning of ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A).

28.    Defendant Nancy Brinn is the Chief Operating Officer of Queens Village.  On the 2002 Summary Plan Description, she is listed as a plan trustee, along with Thomas White, Jr.

29.    On behalf of Queens Village in its capacity as Pension Plan Administrator, Brinn signed and submitted the pension plan administrator's annual 5500 SF forms for the July 1, 2009-June 30, 2010 plan year and for the July 1, 2010-June 30, 2011 plan year.

30.    In filling out line 12(b) on the Form 5500 SF, Brinn failed to follow the directions which stated, in pertinent part: "If there is an accumulated funding deficiency for a prior year that has not been waived, that amount should also be included as part of the contribution required for the current year."  In not including

10

the accumulated funding deficiency on the 5500 SF forms for the 2009 and 2010

plan years, Brinn and Queens Village concealed the failure by Queens Village to

make the mandatory contributions for the pension plan years ending on June 30,

2009 and June 30, 2010.

31.    In concealing that  Queens Village had a debt for unpaid past required

contributions to the plan, Brinn and Queens Village thereby concealed the plan

asset consisting of the plan's chose in action (its right to collect the unpaid

contributions) from plan participants.   Brinn exercised authority and control over

the pension plan asset consisting of the plan's chose in action (its right to payment

of the debt that Queens Village owed the pension plan for the unpaid mandatory

contributions).

32.    Nancy Brinn exercised discretionary authority or discretionary

control  respecting management of the pension plan in concealing the failure of

Queens Village to make its mandatory contributions to the pension plan on behalf

of the pension plan's participants for the 2008-2010 plan years.   Nancy Brinn is a

fiduciary, within the meaning of ERISA section 3(21)(A), 29 U.S.C.§1002(21)(A),

of the pension plan.

33.    Defendant Nilda Ruiz is and has been, at pertinent times, the Chief

Financial Officer of Queens Village.  On behalf of Queens Village in its capacity

as Pension Plan Administrator, she signed and submitted the annual reports of the pension plan on Form 5500 SF, to the U.S. Department of Labor, for the plan year ending on June 30, 2012, through the plan year ending on June 30, 2017.   She had the authority to fill out and sign the forms on behalf of plan administrator Queens Village.

34.    In filling out line 12(b) on the Form 5500 SF, Ruiz failed to follow the directions which stated, in pertinent part: "If there is an accumulated funding deficiency for a prior year that has not been waived, that amount should also be included as part of the contribution required for the current year."

35.    On the 5500 SF forms filed with the Department of Labor that she signed, Ruiz did not reveal, and concealed that the Queens Village mandatory contributions to the pension plan for the plan years ending on June 30, 2009, 2010 and 2011 had not been made.   In concealing that  Queens Village had a debt for unpaid past required contributions to the plan, Ruiz and Queens Village thereby concealed the plan asset consisting of the plan's chose in action (its right to collect the unpaid contributions) from plan participants. Ruiz exercises authority and control over the pension plan asset consisting of the plan's chose in action (its right to payment of the debt that Queens Village owed the pension plan for the unpaid mandatory contributions).

12

36.    Ruiz exercised discretionary authority or discretionary control respecting management of the pension plan in concealing the failure of Queens Village to make its mandatory contributions to the pension plan on behalf of the pension plan's participants for the 2008-2010 plan years.. Nilda Ruiz is a fiduciary, within the meaning of ERISA section 3(21)(A),29 U.S.C. §1002(21)(A), of the pension plan.

37.    On information and belief, prior to filing these 5500 forms for the plan years ending on June 30, 2012 through June 30, 2017, Nilda Ruiz, Diane Gonzalez and Nancy Brinn all were aware of this requirement that accumulated funding deficiencies for any plan year had to be set forth as required contributions in the 5500 SF filed for the subsequent year, and all were aware that the accumulated funding deficiencies were not being listed.   Gonzalez had the authority to require Ruiz to include the cumulative funding deficiency on line 12(b) of the 5500 SF forms, but did not do so.

## ALLEGATIONS OF FACT

38.    Queens Village established its defined contribution pension plan for its employees in 1980.

39.    The 2002 pension plan summary plan description (SPD) states that a

13

person is eligible to participate in the pension plan after completing one year of

service for Queens Village and attaining the age of 21.

40.    That 2002 SPD states, in SECTION THREE:

Each year you are eligible to receive an Employer Contribution, QUEENS
VILLAGE COMMITTEE FOR MENTAL HEALTH FOR J-CAP, INC. will
contribute an amount equal to 7% of your Compensation up to the Taxable Wage
Base, plus an amount equal to 5.7% of your Compensation above the Taxable
Wage Base.

41.    The Queens Village fiscal year started on July 1st and ended on June

30th.  The pension plan similarly used a plan year which started on July 1 and

ended on June 30th.

42.    The Queens Village audited financial statements provide that for the

fiscal year of July 1, 2007-June 30, 2008, the Queens Village pension plan

contribution expense was $202,851.  For the fiscal year ending on June 30, 2009

(the 2008 plan year), that expense was $216,057.  No contribution has been made

to the plan for that 2008 plan year.

43.    The pension plan's form 5500 SF, for the 2009 pension plan year

ending June 30, 2010, stated that the Queens Village required contribution for that

year was $212,193.  That contribution was not made, and has never been made.

On Line 12(b) of that form, which lists the required contribution for that plan year,

Queens Village was required to include the amount that it was required to, but did

14

not, contribute for the 2008 plan year.   Queens Village did not do so.

44.    Line 12(b) of the pension plan's form 5500 SF, for the 2010 pension plan year ending June 30, 2011, stated that the Queens Village required contribution for that year was $187,000.   That contribution was not made, and has never been made.  Line 12(b) was required to have included the $212,193 that had been required to have been made for the 2009 pension plan year ending on June 30, 2010, but which had not been made, and the amount that Queens Village had been required to contribute for the 2008 plan year, but did not.

45.    Queens Village failed to make the contributions to the pension plan for each of the 2008, 2009 and 2010 pension plan years, that were required by the terms of the pension plan.

46.    Effective for the pension plan year starting on July 1, 2011, the pension plan was amended to reduce the employer's contribution percentage from 7% to 1%.

47.    Line 12(b) of the pension plan's Form 5500 SF for the 2011 pension plan year ending on June 30, 2012 stated that the contribution required for that plan year was $32,063.  Line 12(b) was required to have included the amounts of the contributions that had been required for the 2008-2010 pension plan years but which had not been made.  Line 12(b) did not include those amounts.

15

48.     Similarly, for all 5500 SF forms subsequently filed to the present, for the 2012 plan years to the most recently filed Form 5500SF, the amount filled in as the required employer contribution for that plan year did not include the amounts that had been previously required to have been contributed, but which had not been contributed, into the pension trust.

49.     As pension plan administrator and named fiduciary, Queens Village has had a continuing obligation to enforce the plan's right to payment of the amount owed the plan by Queens Village in its corporate capacity.

50.     Queens Village has had a continuing conflict of interest in determining whether to enforce the debt against itself.  As the named fiduciary with a conflict of interest, Queens Village acted in its own self-interest in failing to seek independent advice from a court as to its obligation to enforce debt which it owed, in its corporate capacity, to the pension plan.  As the person who controlled the day-to-day actions of Queens Village, Gonzalez also had a conflict of interest in determining whether to enforce the plan's chose in action for the debt that she wanted to conceal from the plan participants.  She acted in her own self interest in failing to seek independent advice from a court as to the obligation of Queens Village to enforce the plan's right to payment of the money that it was owed by Queens Village.

## The Queens Village Financial Statements

51.    As a charitable organization, Queens Village was required to make an annual filing with the New York State Department of Law (Office of the Attorney General) on NYS Form CHAR 500.  The annual filing included audited financial statements and a copy of IRS Form 990, the Return of an Organization Exempt from Income Tax, filed by Queens Village with the Internal Revenue Service (IRS).

52.    The Queens Village Annual Filing for its 2008 fiscal year (July 1, 2008-June 30, 2009) included audited financial statements.   For that year, Queens Village received the following government contributions and grants:

        a.    New York State:    $6,228,752.00

        b.    New York City:    $ $2,135,398.00

        c.    Federal gov't:    $    630,554.00

Of the Queens Village total revenues for the year of $9,462,005.00, $ 9,174,704.00 came from these government funding sources.

53.    In note 5 to its financial statements for the 2008 fiscal year,  Queens Village stated that its funding policy for the pension plan was to make contributions as they accrue.

54.    In Note 10 to its financial statements for its 2008 fiscal year, Queens

Village also stated that it is associated, through common management, with New Spirit II, Inc. (New Spirit), another 501(c)(3) tax exempt organization, through a management agreement.

55.    On information and belief, Diane Gonzalez has served as chief executive officer of New Spirit while she has served as chief executive officer of Queens Village; Nancy Brinn has served as chief operating officer of New Spirit while she has served as chief operating officer of Queens Village, and Nilda Ruiz has served as chief financial officer of New Spirit while she has served as chief financial officer of Queens Village.

56.    On information and belief, the application filed by Queens Village each year to New York State's Office of Alcohol and Substance Abuse Services (OASAS) included an estimate of the contribution to the pension plan that Queens Village would have to make that year to fund the pension benefits of plan participants. On information and belief, the New York State OASAS grant allocated money to be used to fund that Queens Village pension plan contribution for its employees.

57.    As set forth in that 2008 annual filing, New Spirit II provides outpatient alcoholism and youth counseling and vocational services.   Note 10 also provides that New Spirit II "has experienced recurrent operating losses over 11 of

18

the last 12 years." On information and belief, New Spirit obtained funding over the years through grants that were separate from the grants that were obtained by Queens Village.

58.   Note 10 also provides that Queens Village had a debt due from New Spirit II in the amount of $447,638, and that this balance had been written down by a cumulative total of $258,436.

59.   Note 7 to the 2010 fiscal year filing with New York State provides that the cumulative balance of the New Spirit II debt to Queens Village of $562,810 was written off entirely by Queens Village.

60.   Note 7 to the 2015 fiscal year financial statements indicated that in 2016, Queens Village forgave $746,145 of the total debt of $ 776,007 owed it by New Spirit, II.

61.   On information and belief, the OASAS grants to Queens Village for its 2008 through 2010 fiscal years did not authorize Queens Village to take money provided by OASAS for the purpose of funding the contributions Queens Village was required to make to its pension plan and use it, instead, to pay current expenses of New Spirit.

62.   On information and belief, for each fiscal year for which it received a grant from OASAS, Queens Village provides a report to OASAS of how it spent

the funds provided by OASAS for that fiscal year.  On information and belief, Queens Village has never stated to OASAS that it did not contribute into the pension plan the money that OASAS gave it for those 2008-2010 fiscal years to fund its contributions into the pension plan for those years.

63.    On information and belief, the money provided by OASAS to Queens Village for the purpose of funding the contributions that Queens Village was required to make to the pension plan for the 2008-2010 pension plan years was used by Queens Village for the purpose of paying expenses incurred by New Spirit.

64.    The Queens Village Form 990 filing included in its NYS CHAR 900 filing for its 2015 fiscal year stated that as of the end of its 2015 fiscal year, Queens Village had net assets of $4,629,818.

65.    Defendant Diane Gonzales has consistently failed to enforce the pension plan's right to payment from Queens Village of its debt to the pension plan for the purpose of covering up that she used the money provided Queens Village in grants to fund the mandatory Queens Village contributions to the pension plan to pay expenses incurred by New Spirit.

66.    A required payment of approximately $200,000 for each of those three years would have been a material expense of Queens Village.  Any financial

audit of the pension plan for those years would have had to include such fixed obligations as assets of the plan.

67.    Queens Village has had the same firm auditing its books since its 2010 fiscal year (July 1, 2010-June 30, 2011). The notes to the Queens Village financial reports state each year what the pension plan expense was for the year. Yet since this firm started auditing the Queens Village financial statements, the auditor  did not note in its auditor's report that Queens Village had failed to make those contributions in its 2008-2010 fiscal years.

68.    The annual pension plan report (Form 5500 SF) that pension plan administrator Queens Village submitted each year was a material document that the auditor should have been reviewing. Through the present, the earnings lost by plan participants on those unpaid contributions likely equaled or exceeded the approximately $600,000 total that Queens Village failed to pay into the pension plan as required contributions during the 2008-2010 pension plan years, given the rise in the stock market during this period and the likelihood that plan participants had invested at least some of their accounts in the stock market.

69.    Instead, over the entire period and through the present, the auditor gave Queens Village an unqualified report that its financial documents fairly stated the financial position of the entity, without clarifying that the company

21

owed the pension plan these unpaid contributions and lost earnings.

## The J-Cap Pension Plan Trustee

70.    The 2011 pension plan summary states that pension plan contributions are held under a trust fund and an annuity contract.  The current trustee of the Plan is listed as: Delaware Charter Guaranty & Trust Company d/b/a/ Principal Trust Company.  Its address is 1013 Centre Road, Wilmington, DE 19805-1265.

71.    The trustee is responsible for allocating the employer contribution into the individual accounts of the participants and the investment vehicles chosen by the participants.  The trustee is a fiduciary, within the meaning of 29 U.S.C. 1002(21)(A), of the pension plan.

72.    The trustee was aware that Queens Village failed to make any contributions into the plan for the 2008-2010 plan years for the benefit of plan participants.  Trustee Principal held a meeting at Queens Village with Gonzalez, Brinn and Ruiz, and a couple of other high level employees of Queens Village about the lack of employer contributions for the 2008-2010 plan years.   Gonzalez wanted the meeting to be confidential.  The trustee told Gonzalez, Brinn, Ruiz and the others at the meeting that Queens Village had not made any contributions into

the pension plan for the 2008-2010 plan years, and that Queens Village had to make the contributions and pay back interest.  On information and belief, the meeting occurred during the 2011-2012 pension plan year, after the due date for making contributions for the 2010 plan year ended on June 30, 2011, and at some point before the time passed for amending the pension plan and making it retroactive to the first day of the 2011 plan year, July 1, 2011, which would have been on or about September 15, 2012.

73.    On information and belief, Gonzalez refused to acknowledge responsibility for the failure of Queens Village to make the contributions, or that Queens Village had any obligation to have made those contributions, or that she or Queens Village had any obligation to enforce the plan's right to receive the contributions.   Gonzalez there denied any responsibility for having Queens Village make those contributions.

74.    On information and belief, Queens Village has not provided the trustee with any written factual explanation why, through the present,  those contributions and lost earnings were not made and could not have been made. On information and belief, the trustee has not sent any writing to the Queens Village Board of Directors, informing them of Queens Village's failure to make the required contributions.

23

<u>Queens Village Has Paid Off the Mortgage on the Building
Housing its In-Patient Treatment Program</u>

75.    In its NYS CHAR 900 filing for its 2015 fiscal year, ending on June 30, 2016,  Note 10 indicated that the secured mortgage taken out by Queens Village in 1998 was due to be fully paid off by 2016, and that its debt service payments had been funded through its OASES grants over the years.   Note 2 to its financial statements stated that Queens Village had fully settled the mortgage payable.

76.    On information and belief, Queens Village could have taken out another mortgage on this property, to obtain the funds necessary to make the pension plan and all participants whole for lost contributions and earnings.  On information and belief, Queens Village could have done so in the years leading up to the full payoff of the mortgage, especially since OASAS was paying the debt service on the mortgage through its grants.

77.    On information and belief, Gonzalez and Queens Village did not ask OASAS to fund the additional payments that would have been due under another mortgage because doing so would have required Gonzalez to reveal to OASAS that the money provided by OASAS to fund the Queens Village contributions to the pension plan for the 2008-2010 plan years were not, in fact, put into the

24

pension plan, but was used for other purposes.

## In 2016, Queens Village Obtains A Large Amount of Money from Verizon Corp. and Puts the Money Into a Television Show on Telemundo Instead of Into the Pension Plan

78.    On information and belief, Verizon Corp. paid Queens Village a large amount of money in 2016 so that it could put an antenna on the roof of the Queens Village building.   On information and belief, instead of putting the money into the pension plan to fund the unpaid contributions, Gonzalez and Queens Village used that money to fund a television show on Telemundo, entitled Salvando Vidas Con J-Cap.

## 2017-2018 Communications with Queens Village

79.    By letters dated December 8, 2017, to the Administrator of the J-Cap Pension Plan, on behalf of plaintiff Ronald Sumter and class member Muriel Harris, attorney Christopher Dagg, Brooklyn Legal Services, asked the Administrator for, among other information;

    a.    Annual account statements for all years that Mr. Sumter and Ms. Harris worked in covered employment; and

b.      For all relevant years in which no contributions were made to Mr. Sumter's account, [to] specify those years and provide a statement explaining the reasons no contributions were made.

80.      By e-mail dated February 8, 2018, Maryann K. Geary, Executive Vice President of BPAS Plan Administration and Recordkeeping Services responded, with a copy to Nilda Ruiz.  Geary wrote that required contributions for the plan years 2008, 2009 and 2010 were not made on account of a "business hardship." She did not further describe this "business hardship" and did not explain whether this hardship had lasted through the present.

81.      She also wrote that the pension plan was going to go through the IRS Voluntary Correction Program to request a waiver for all or part of the contributions due for 2008, 2009, and 2010.

82.      On Wednesday March 8, 2018, Attorney Dagg sent an e-mail to Geary, requesting an update.   Ms. Geary responded by e-mail dated March 16th: "We are still working on the corrections for the plan.  I will keep you posted as soon as we have a time frame."

The Express Terms of the IRS Program Do Not Authorize Any Such "Waiver"

83.      Section 6.02 (1) of the IRS Voluntary Correction Program requires a

26

plan to be restored "to the position to the position it would have been in had the failure not occurred, including restoration of current and former participants and beneficiaries to the benefits and rights they would have had if the failure had not occurred."  IRS Revenue Procedure 2016-51, 2016 IRS Lexis 586.

84.    There is no such thing as "voluntary compliance" that puts a governmental seal of approval on cheating employees out of what they were promised in exchange for their labor, under any doctrine of "waiver."

85.    Further, where the plan sponsor is self-correcting a significant operational failure, section 9 of the Revenue Procedure provides that the last day of the correction period "is the last day of the second plan year following the plan year for which the failure occurred."

86.    For the 2010 plan year which ended on June 30, 2011, that would have been June 30, 2014.  Thus, the plan sponsor is way out of time for any so-called "voluntary correction."

87.    The Geary response was an attempt to stall the participants.

## CLASS ACTION ALLEGATIONS

88.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

89.    Plaintiffs asserts their claims on behalf of the following class of participants: All participants in the pension plan during the 2008-2010 plan years who did not receive a contribution that they were entitled to receive, under the terms of the plan, to their accounts in the pension plan for at least one of those plan years, and who were or have become vested in their benefits under the plan for those plan years, and their beneficiaries.

90.    <u>Numerosity</u>:       The class is so numerous that joinder of all class members is impractical.  As set forth in its Form 5500SF's, the pension plan had 85 participants at the beginning of the 2010 plan year, 76 at the end of the plan year, and 59 who had account balances at the end of the plan year.  For its 2009 plan year, the plan had 96 participants at the beginning of the plan year, 80  at the end of the plan year, and 67 who had account balances at the end of the plan year.

91.    For the 2013 plan year, the plan had 99 participants at the beginning of the plan year, 73 at the end of the plan year, and 71 who had account balances at the end of the plan year.   For the 2016 plan year, the plan had 67 active

participants at the beginning of the plan year, and 60 at the end of the plan year.

92.    The members of the class can be objectively ascertained through the use of information contained in the pension plan's records because both Queens Village and the Plan Trustee, which allocates the contribution to the accounts of individual participants, should know which participants were plan members entitled to receive a contribution for any or all of the 2008, 2009 or 2010 plan years.   The pension plan summary plan description states that the pension plan trustee which holds contributions in a trust fund, is Delaware Charter Guaranty & Trust Company, d/b/a/ Principal Trust Company, 1013 Centre Road, Wilmington, DE 19805-1265.


93.    Typicality:   Plaintiff's claims are typical of the class members' claims.   All participants were treated the same–none received a contribution for those plan years.    Certification is also desirable and proper because Plaintiffs will fairly and adequately protect the interest of the class they seek to represent.  There is no conflict of interest between plaintiffs and any other member of the proposed class and the interest of all members of the class is the same.

94.  <u>Adequacy</u>:   Plaintiffs will fairly and adequately protect the interests of the Class, as their interest is aligned with the Class that they seek to represent. They have retained counsel experienced in ERISA pension litigation.  Plaintiff's attorney is qualified, experienced and able to conduct the proposed class action litigation.

95.  <u>Commonality</u>:     Common questions of law and fact exist as to all class members and predominate over any questions solely affecting individual class members, including but limited to:

a.     the obligation of the pension plan administrator to enforce the plan's chose in action (the plan asset) against plan sponsor Queens Village for the unpaid contributions and lost earnings;

b.     the obligation of the pension plan administrator, and of Diane Gonzalez, both fiduciaries with a conflict of interest, to petition this federal court and seek guidance as to their obligation to enforce the plan chose in action against the plan sponsor, Queens Village;

c.     the legal significance of the concealment by plan administrator Queens Village acting through Nancy Brinn and Nilda Ruiz, on the 5500 form for the 2009 plan year through the present,  of the failure of plan

30

sponsor Queens Village to make the required contributions for the 2008-2010 plan years.

96.    Class certification also is appropriate under Fed. R. Civ. P. 23(b)(1)(B) because adjudications of these legal issues with respect to individual class members, as a practical matter, would be dispositive of the interests of other plan participants   or would substantially impair or impede their ability to protect their interests.

## CLAIMS FOR RELIEF

### First Claim for Relief

### ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2),  for which Relief is Authorized by ERISA section 409, 29 U.S.C. § 1109

97.    Paragraphs 1-96 are incorporated by reference as if fully set forth herein.

98.    ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2), provides: A civil action may be brought by a . . . participant for appropriate relief under section 409.

31

99.    ERISA section 409, 29 U.S.C. § 1109, provides, in pertinent part:

(a)    Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any or profits of such fiduciary which have been made through assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.  A fiduciary may also be removed for violation of section 411 of this Act.

100.    When an employer fails to make contractually required contributions to a pension plan, the plan has an enforceable right to collect the unpaid contributions, and that enforceable right is a plan asset.  Rahm v. Halpin, 566 F.3d 286, 291 (2d Cir. 2009), citing United States v. LaBarbara, 129 F.3d 81, 88 (2d Cir. 1997).

101.    Plan Administrator and named fiduciary Queens Village has continuously failed to enforce the pension plan's right to collect the unpaid contributions that plan sponsor Queens Village owed the pension plan, which then would be allocated into the individual accounts of all plan participants eligible to share in the allocation, in violation of ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2), and its duties under ERISA section 404(a)(1), 29 U.S.C.§1104(a)(1).

102.    Plan fiduciary Diane Gonzalez is and has been responsible for

32

determining which of Queens Village's creditors would be paid or in what order, and had authority and control over the management of Queens Village. She has continuously failed to cause Queens Village, as named fiduciary, to enforce the plan's right to collect the unpaid contributions that Queens Village in its capacity as plan sponsor owed the pension plan, in violation of her fiduciary duties of loyalty and prudence, in violation of ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1).

103.  Plan fiduciaries Queens Village, Nancy Brinn and Nilda Ruiz concealed the failure of Queens Village to make mandatory employer contributions into the pension plan by failing to list the unpaid contributions for plan years 2008-2010 as required contributions on Form 5500SF, the pension plan's annual report to the Department of Labor, for each plan year subsequent to the plan year for which a required contribution was not made, in violation of their duties of prudence and loyalty, in violation of ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1).  Queens Village, Brinn and Ruiz did this for the purpose of concealing that money given in grants to Queens Village for the purpose of paying these contributions into the pension plan was used for other purposes.

<u>Second Claim for Relief</u>

<u>ERISA section 404(a), 29 U.S.C. § 1104(a), as enforced through</u>
<u>ERISA section 502(a)(3), 29 U.S.C. §1132(a)(3)</u>

104.    Paragraphs 1-103 are incorporated by reference as if fully set forth

herein.

105.    ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1), requires a plan

fiduciary to discharge its  duties with respect to a plan solely in the interest of plan

participants and (A) for the exclusive purpose of providing benefits to

participants; (B) with the care, skill, prudence and diligence under the

circumstances then prevailing that a prudent man acting in a like capacity and

familiar with such matters would use in the conduct of an enterprise of a like

character and with like aims; © by diversifying the investments of the Plan so as to

minimize the risk of large losses, unless under the circumstances it is clearly

prudent not to do so; and (D) in accordance with the documents and instruments

governing the plan insofar as the documents and instruments are consistent with

Title I of ERISA.

106.    When an employer fails to make contractually required contributions

to a pension plan, the plan has an enforceable right to collect the unpaid

contributions and that enforceable right is a plan asset.  <u>Rahm v. Halpin</u>, 566 F.3d

286, 291 (2d Cir. 2009), citing United States v. LaBarbara, 129 F.3d 81, 88 (2d Cir. 1997).

107.    Plan Administrator and named fiduciary Queens Village has continuously failed to enforce the pension plan's right to collect the unpaid contributions that plan sponsor Queens Village owed the pension plan, which then would be allocated into the individual accounts of all plan participants eligible to share in the allocation, in violation of ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2), and its duties under ERISA section 404(a)(1), 29 U.S.C.§1104(a)(1).

108.    Plan fiduciary Diane Gonzalez is and had been responsible for determining which of Queens Village's creditors would be paid or in what order, and had authority and control over the management of Queens Village.  She has continuously failed to cause Queens Village, as named fiduciary, to enforce its right to collect the unpaid contributions that Queens Village in its capacity as plan sponsor owed the pension plan.  She did so, at least in part, for the purpose of covering up her use of the money given in grants to Queens Village for the purpose of paying these contributions, for other purposes, in violation of her fiduciary duties of loyalty and prudence, in violation of ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1).

109.    Plan fiduciaries Nancy Brinn and Nilda Ruiz concealed the failure of

35

Queens Village to make mandatory employer contributions into the pension plan by failing to list the unpaid contributions for plan years 2008-2010 as required contributions on Form 5500 SF, the pension plan's annual report to the Department of Labor, for each plan year subsequent to the plan year for which a required contribution was not made, in violation of their duties of prudence and loyalty, in violation of ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1).

## PRAYER FOR RELIEF

Wherefore Plaintiffs prays that the Court:

1.      Certify the class and the claims for relief for class treatment;

2.      Appoint Plaintiffs as Class Representatives;

3.      Designate Robert L. Liebross, Esq., as counsel for the class;

4.      DECLARE that Queens Village, the Plan Administrator; and Diane Gonzalez, Nancy Brinn, and Nilda Ruiz have breached the duties, obligations and responsibilities imposed on them by ERISA;

5.      (A)      DECLARE that the defendants are jointly and severally liable to make the plan whole by restoring the amounts of the contributions that the plan would have received and the money those contributions would have earned in the individual accounts, but for their fiduciary breaches; and

(B)      ORDER the defendants, and each of them, to make the plan

36

whole by restoring the amounts of the contributions that the plan would have received and the money those contributions would have earned in the individual accounts, but for their fiduciary breaches; and

(C)    ORDER Queens Village to provide the Trustee with all information needed by the Trustee to allocate the appropriate share of those contributions and earnings into the individual accounts of each plaintiff and each class member;

6.    (A)    DECLARE that defendants are jointly and severally liable to restore to the accounts of each plaintiff and each class member the amounts of the earnings that each would have received on contributions made into the plan but not timely allocated into their individual accounts, arising out of the failures by defendants to provide the Trustee with all information necessary for the Trustee to allocate contributions made by Queens Village for any plan year into the individual accounts of the plaintiffs and the class members in a timely manner; and

(B)    ORDER Queens Village to provide the Trustee with all information needed by the Trustee to allocate those funds, in the appropriate amounts, into the individual accounts of the plaintiffs and each class member;

7.    ORDER Queens Village to order the Trustee to freeze the accounts of Diane Gonzalez, Nancy Brinn, and Nilda Ruiz in the pension plan; and not to

37

make any distribution of any part of their account balances in the plan;  or in any way alienate any of their account balances in the plan, pending further order of the Court;

8.    ISSUE preliminary and permanent injunctions against Plan Administrator Queens Village, forbidding it from authorizing Diane Gonzalez, Nancy Brinn and Nilda Ruiz from having any authority or responsibility of any kind with respect to the pension plan, and against Diane Gonzalez, Nancy Brinn and Nilda Ruiz, forbidding them from taking any action of any kind with respect to the pension plan,  pending further order of the Court;

9.    ORDER the defendants, and each of them, to notify all class members that contributions required to have been made to their accounts in the pension plan for the 2008, 2009 and 2010 plan years were not made; that contributions for other plan years may not have been timely allocated to their accounts, and that they may be entitled to additional contributions and lost earnings on those contributions; and that the Plan Administrator or the Trustee will shortly send them a revised statement of the balance in their accounts, after all contributions and lost earnings have been calculated and determined;

10.    ORDER the defendants, jointly and severally, to pay Plaintiffs the costs of suit herein, and reasonable attorney's fees, to be determined by the Court,

pursuant to ERISA section 502(g)(1), 29 U.S.C. § 1132(g)(1), and under any other applicable law; and award Plaintiffs their disbursements and expenses for this action, in amounts to be determined by the Court;

11.     Order that class counsel shall be compensated for his efforts on behalf of the class through an award, whose amount shall be determined by the court, out of any recovery obtained by the class, before the amounts recovered are deposited into the pension plan's trust and allocated into the appropriate participant accounts in the plan;

12.     AWARD each plaintiff a reasonable bonus from the proceeds recovered for the class, in an amount to be determined by the Court, not to exceed $10,000 each for their efforts in successfully obtaining relief for the class, and

13.     GRANT such other and further relief as the Court deems just and proper.

Respectfully submitted:

_____/s/_____

Robert L. Liebross (RL2912)

LAW OFFICE OF ROBERT L. LIEBROSS
Attorney for Plaintiffs
39 Broadway, Suite 1620
New York, NY 10006
212-566-2151
rliebross@liebrosslaw.com

39