UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
REED, *et al.*,

                Plaintiffs,

    - against-

QUEENS VILLAGE COMMITTEE FOR
MENTAL HEALTH FOR J-CAP, INC.,
*et al.*,

             Defendants.
-----------------------------------------------------X

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ SEP 17 2019 ★

BROOKLYN OFFICE

**MEMORANDUM & ORDER**
18-CV-3114 (AMD) (JO)

**ANN M. DONNELLY, U.S. District Judge:**

      On May 25, 2018, the plaintiffs commenced this civil action against Queens Village

Committee for Mental Health for Jamaica Community Adolescent Program, Inc. ("Queens

Village"), Diane Gonzalez, Nilda Ruiz, and Nancy Brinn (collectively, the "Queens Village

defendants"), alleging violations of the Employee Retirement Income Security Act (ERISA), 29

U.S.C. § 1001, *et seq.* (ECF No. 1.) The plaintiffs filed an amended complaint on September

24, 2018, which added a co-fiduciary liability claim against Delaware Charter Guaranty and

Trust Company, d/b/a Principal Trust Company. (ECF No. 21.) On November 1, 2018, the

Queens Village defendants and Principal moved separately to dismiss the claims against them.

(ECF Nos. 33, 34.) For the reasons explained below, the Queens Village defendants' motion is

granted in part and denied in part, and Principal's motion is denied.

# BACKGROUND[1]

The plaintiffs are former employees of Queens Village who participated in the J-Cap Pension Plan and did not receive some or all the contributions to which they were entitled from Queens Village within the 2008 to 2016 timeframe.[2] (ECF No. 21 ("Compl.") ¶¶ 1, 17-20.)

Queens Village is a non-profit 501(c)(3) corporation that runs a residential drug and alcohol abuse treatment program in Jamaica, New York. (Compl. ¶ 2.) Queens Village sponsors the Pension Plan for its employees and "is responsible for the day-to-day administration and management of the plan." (Compl. ¶ 23.) It is also the named fiduciary of the Pension Plan. (Compl. ¶ 23.)

The plaintiffs allege that the three individual defendants – Diane Gonzalez, Nancy Brinn, and Nilda Ruiz – are fiduciaries for the Pension Plan. (Compl. ¶¶ 13.) Ms. Gonzalez is the Chief Executive Officer of Queens Village. (Compl. ¶ 24.) The plaintiffs assert that Ms. Gonzalez "exercises authority and control over the pension plan asset" — "its right to payment of the debt that Queens Village owed the pension plan" — and "has the authority to determine and control… whether and under what circumstances Queens Village… would manage or dispel of the plan asset." (Compl. ¶¶ 25-26.) They also say that Ms. Gonzalez exercises control over whether to seek federal court guidance on how Queens Village should exercise its fiduciary duty to the Pension Plan, that she controls which of Queens Village's creditors get paid and in what

---

[1] For purposes of deciding the defendants' motions, I accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).

[2] The plaintiffs purport to bring their claims on behalf of themselves, the pension plan, and all pension plan participants who were eligible for contributions from Queens Village for the 2008-2016 plan years. (Compl. ¶ 13.)

order, and that she "exercises discretionary authority or discretionary control" over what information is provided to Principal. (Compl. ¶¶ 27-29.)

Ms. Brinn is the Chief Operating Officer of Queens Village and is listed as a Pension Plan trustee. (Compl. ¶ 31.) Ms. Brinn signed the Pension Plan's annual U.S. Department of Labor Form 5500 SF ("Form 5500 SF") for the 2009 and 2010 plan years. (Compl. ¶ 32.) According to the plaintiffs, Ms. Brinn had "discretionary authority or discretionary control respecting management" of the Pension Plan because she "conceal[ed] the failure of Queens Village to make its mandatory contributions… for the 2008-2010 plan years." (Compl. ¶ 35.)

Ms. Ruiz is the Chief Financial Officer of Queens Village. (Compl. ¶ 36.) Ms. Ruiz signed the Pension Plan's annual Form 5500 SFs for the 2012 to 2016 plan years. (Compl. ¶ 36.) As with Ms. Brinn, the plaintiffs allege that Ms. Ruiz had "discretionary authority or discretionary control respecting management" of the Pension Plan because she "conceal[ed] the failure of Queens Village to make its mandatory contributions… for the 2008-2010 plan years." (Compl. ¶ 39.)

Principal Trust Company is a trustee of the Pension Plan. (Compl. ¶¶ 13.) The plaintiffs allege that Principal is also a co-fiduciary of the Pension Plan pursuant to ERISA § 405(a), 29 U.S.C. § 1105(a). (Compl. ¶¶ 41.) Principal holds Queens Village's contributions to the Pension Plan in a trust fund. (Compl. ¶ 41.)

*The Pension Plan*

Queens Village created the Pension Plan in 1980 for employees who complete at least one year of service to Queens Village. (Compl. ¶¶ 42-43.) Pursuant to the Pension Plan, Queens Village was supposed to "match" employees' contributions by contributing funds into the plan on the employees' behalf. (Compl. ¶ 4.) According to the plaintiffs, the 2002 Pension Plan

3

description says that Queens Village "will contribute an amount equal to 7% of [the participant's] compensation up to the Taxable Wage Base, plus an amount equal to 5.7% of [the participant's] compensation above the Taxable Wage Base." (Compl. ¶ 44.) A grant from the New York State Office of Alcohol and Substance Abuse Services (OASAS) provides some or all of the funding for Queens Village's contributions to the plan. (Compl. ¶¶ 3, 4.)

For the plan years 2007 through 2010,[3] Queens Village did not pay its required contributions, which were $202,851 for 2007, $216,057 for 2008, $212,193 for 2009, and $187,000 for 2010. (Compl. ¶¶ 46, 48-49.)

As of July 1, 2011, the Pension Plan was amended so that Queens Village was required to contribute only 1% of the participant's compensation. (Compl. ¶ 50.) Queens Village's contribution for the 2011 plan year was $32,063.[4] (Compl. ¶ 51.)

"At some point after contributions were due for the 2010 plan year" in 2012, Principal met with Queens Village and the three individual defendants. (Compl. ¶ 10.) The individual defendants announced that Queens Village would not be enforcing the Pension Plan's right to payment for the unpaid 2008 to 2010 contributions. (Compl. ¶ 10.) After that meeting, Principal did not alert the plan participants that Queens Village did not intend to enforce the plan's right to payment of the unpaid contributions. (Compl. ¶ 10.)

The plaintiffs allege that "[b]y early 2016, at the latest," Queens Village had funds available to pay the contributions it owed the Pension Plan; they point out that Queens Village

---

[3] A "plan year" runs from July 1 through June 30. (Compl. ¶ 46; *see, e.g.*, ECF No. 34-2 at 4.) In this instance, the 2007 plan year refers to the year beginning July 1, 2007, and ending June 30, 2008.

[4] The amended complaint does not specify whether Queens Village paid this amount, but the plaintiffs allege that "For subsequent plan years through at least the 2016 plan year, on information and belief, Queens Village failed to contribute the amount it was required by the terms of the plan, and by law, to contribute into the plan for that plan year." (Compl. ¶ 5.)

satisfied the mortgage for its residential treatment facility prior to February 29, 2016. (Compl. ¶¶ 11, 12, 80-83.) The plaintiffs reason that the mortgage was "worth millions of dollars," and that therefore Queens Village "had and has assets from which the plan's loss could be recovered." (Compl. ¶ 12.) They also allege that Verizon paid Queens Village "a large amount of money in 2016," which Queens Village used to create a television show "instead of putting the money into the pension plan to fund the unpaid contributions." (Compl. ¶ 84.)

*The Form 5500 SFs*

According to the plaintiffs, Queens Village concealed its failure to make the required contributions to the Pension Plan on the annual Form 5500 SF for the 2008-2010 plan years. (*See, e.g.*, Compl. ¶¶ 6-8, 47-28, 51-52.)

Under ERISA, the Pension Plan is required annually to file a Form 5500, also known as an "annual report;" on which the Pension Plan must include financial information such as assets, liabilities, income and expenses, including the amount of any employer contributions. (*See* 29 U.S.C. § 1023; Annual Reporting and Disclosure, 72 FR 64710-01 (November 16, 2007).[5]) The contents of all annual reports must be maintained publicly. 29 U.S.C. § 1026.

Queens Village, as sponsor for the Pension Plan, must "[e]nter the minimum required contribution for [each] plan year" in Form 5500 SF Part VI ("Pension Funding Compliance"), Line 12(b). (*See* Compl. ¶¶ 47-48, 51-52; *see also* ECF No. 34-2 at 5, 7, 9, 11, 14.) The

---

[5] "The Form 5500 Annual Return/Report is the primary source of information concerning the operation, funding, assets, and investments of pension and other employee benefit plans. In addition to being an important disclosure document for plan participants and beneficiaries, the Form 5500 Annual Return/Report is a compliance and research tool for the Department of Labor (Department), Internal Revenue Service (IRS), and the Pension Benefit Guaranty Corporation (PBGC) (collectively, the Agencies) and a source of information and data for use by other federal agencies, Congress, and the private sector in assessing employee benefit, tax, and economic trends and policies." (*See also* U.S. Department of Labor website, "Form 5500 Series" (August 26, 2019), https://www.dol.gov/agencies/ebsa/employers-and-advisers/plan-administration-and-compliance/reporting-and-filing/form-5500.)

instructions for Line 12(b) provide as follows: "If there is an accumulated funding deficiency for a prior year that has not been waived, that amount should also be included as part of the contribution required for the current year." (Compl. ¶ 33; *see also* Instructions for Form 5500-SF, Short Form Annual Return/Report of Small Employee Benefit Plan at 18.[6])

The plaintiffs allege that for each plan year beginning in 2008, Queens Village included the required contribution amount only for the particular plan year, and did not include the deficiency for the prior year. (Compl. ¶¶ 47-48, 51-52.) They say that Ms. Brinn "signed and submitted" the annual Form 5500 SFs for the 2010 and 2011 plan years, and that Ms. Ruiz "signed and submitted" the Form 5500 SFs for the 2012 through 2016 plan years. (Compl. ¶¶ 32, 36.) According to the plaintiffs, Ms. Brinn and Ms. Ruiz "failed to follow the directions" and "concealed" the fact that Queens Village did not make mandatory contributions to the Pension Plan by not including the accumulated funding deficiency from the prior year in Line 12(b). (Compl. ¶¶ 33, 37-38.) The plaintiffs say that Ms. Gonzalez "had the authority to direct Ruiz to include the cumulative funding deficiency on Line 12(b)... but did not do so." (Compl. ¶ 40.)

Line 12(e) of Form 5500 SF asks whether "the minimum funding amount...[will] be met by the funding deadline." (*See, e.g.*, ECF No. 34-2 at 5, 7, 9, 12, 15.) The funding deadline is "8 ½ months after the end of the plan year." (*See* Instructions for Form 5500-SF at 19.) For the 2009, 2011, 2012 and 2013 plan years Queens Village checked "Yes," indicating it would meet the minimum funding amount by the deadline. (*See* ECF No. 34-2 at 5, 9, 12, 15.) Queens Village checked "No" for the 2010 plan year and "N/A" for the 2014 to 2016 plan years. (ECF No. 34-2 at 7, 18, 21, 24.)

---

[6] *Available at* https://www.dol.gov/sites/dolgov/files/EBSA/employers-and-advisers/plan-administration-and-compliance/reporting-and-filing/form-5500/2018-sf-instructions.pdf.

*Principal*

Pension Plan contributions are held by Principal in a trust fund, for which Principal is the trustee. (Compl. ¶ 85.) Principal is "responsible for allocating the employer contribution into the individual accounts of the participants and the investment vehicles chosen by the participants." (Compl. ¶ 86.) According to the plaintiffs, Queens Village did not provide Principal with information that it needed to make a proper allocation of money into individual accounts within the plan, "causing participants to lose contributions and earnings." (Compl. ¶ 8.)

The plaintiffs allege that Principal "knew" that Queens Village did not make "all or most of its required contributions" for the 2008-2010 plan years, and did not make "the full amount of required contributions" for the 2011 through 2016 plan years. (Compl. ¶ 87, *see also* Compl. ¶ 125.) As discussed above, the plaintiffs assert that sometime between June 30, 2011, and September 15, 2012, Principal discussed the missing contributions with Ms. Gonzalez, Ms. Brinn, Ms. Ruiz, and others, and told them that Queens Village had to pay the missing contributions to the Pension Plan. (Compl. ¶ 87.) However, Principal did not inform the Queens Village Board of Directors or the Department of Labor that Queens Village did not pay contributions to the Pension Plan. (Compl. ¶ 89-90.) The plaintiffs allege that Principal "failed to bring a civil action against named fiduciary Queens Village for failing to enforce the plan's right to payment of the unpaid contributions, to recover the plan's loss." (Compl. ¶¶ 12, 90, 128.)

*The Amended Complaint*

The Amended Complaint asserts three causes of action; the first and second are against the Queens Village defendants and the third is against Principal. (Compl. ¶¶ 110-29.) The first claim against the Queens Village defendants is for breach of fiduciary duty pursuant to ERISA

§§ 409 and 502(a)(2), 29 U.S.C. §§ 1109, 1132(a)(2). (Compl. ¶¶ 111-16.) The plaintiffs accuse Queens Village and Ms. Gonzalez of "continuously fail[ing]" to enforce the Pension Plan's right to contributions, and accuse Queens Village, Ms. Brinn and Ms. Ruiz of concealing Queens Village's "failure" to make contributions on the Form 5500 SFs for the 2008-2016 plan years. (Compl. ¶¶ 114-16.) The second claim is for breach of fiduciary duty pursuant to ERISA §§ 404(a) and 502(a)(3), 29 U.S.C. §§ 1104(a), 1132(a)(3), and includes the same substantive allegations as the first claim. (Compl. ¶¶ 118-22.)

The third claim is for co-fiduciary liability pursuant to ERISA §§ 405(a) and 502(a)(3), 29 U.S.C. §§ 1105(a), 1132(a)(3); the plaintiffs assert that as a co-fiduciary, Principal is responsible for Queens Village's breaches of fiduciary duty. (Compl. ¶¶ 125-29.) The plaintiffs allege that Principal knew that Queens Village did not pay the required contributions, knew that Queens Village had funds available to pay what it owed, and did not file a civil action to enforce the Pension Plan's rights to the debt. (Compl. ¶¶ 125-28.)

The plaintiffs seek to recover unpaid contributions and lost earnings, as well as declaratory relief, preliminary and permanent injunctions against the Queens Village defendants, a $10,000 "bonus" for each named plaintiff, attorney's fees and costs. (Compl. at 34-36.)

## LEGAL STANDARD

A court considering a motion to dismiss must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

8

678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id.* (citing *Twombly*, 550 U.S. at 556).

At the motion to dismiss stage, the court "is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference." *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) (quoting *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)). The court may also consider any "documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit," as long as the plaintiff relied on the "terms and effect of a document in drafting the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citing *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

In the complaint, the plaintiffs quote from and rely on various documents, including the Pension Plan contracts and the annual Form 5500 SFs. Accordingly, I consider them in deciding this motion. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991); *Williams v. Time Warner*, 440 F. App'x at 9; *Chambers v. Time Warner*, 282 F.3d at 153.

## DISCUSSION

*The Fiduciary Status of the Individual Defendants*

ERISA Section 3 defines a "fiduciary with respect to a plan" as someone who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets" or "has any discretionary authority or discretionary responsibility in the administration of such plan." 29

U.S.C.A. § 1002(21)(A)(i),(iii); *see also Finkel v. Romanowicz*, 577 F.3d 79, 86 (2d Cir. 2009) (explaining that "'management or disposition'... refers to the common transactions in dealing with a pool of assets: selecting investments, exchanging one instrument or asset for another, and so on" (quoting *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 28 (2d Cir. 2002))). To establish the personal liability of a fiduciary, the plaintiffs must show "both that (1) the unpaid contributions were plan assets and (2) [the defendant] exercised a level of control over those assets sufficient to make him [or her] a fiduciary." *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009). The defendants do not dispute that the delinquent contributions are plan assets, so the remaining question is whether Ms. Gonzalez, Ms. Brinn, and Ms. Ruiz exercised the requisite level of control over plan assets to make them fiduciaries.

The definition of fiduciary "'focuses on the exercise, as well as the possession, of authority or control' over a pension plan's assets, without regard to the title of the person exercising such control." *Allen v. Credit Suisse Sec. (USA) LLC*, 895 F.3d 214, 223 (2d Cir. 2018) (quoting *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812-13 (2d Cir. 1987)). "Even if a person is not a named fiduciary of an ERISA plan, [she] can be a de facto fiduciary" if she has discretionary control or authority over the plan assets. *Allen*, 895 F.3d at 223 (citing 29 U.S.C.A. § 1002(21)(A)). This is a question of function, not form. *Id.*; *Finkel*, 577 F.3d at 86. In other words, if a person *actually* exercises control over the plan assets, she is a fiduciary regardless of what the plan documents say. *Allen*, 895 F.3d at 223-24.

The factual allegations in the complaint establish that Ms. Gonzalez was an ERISA fiduciary. *See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 189 (2d Cir. 2015) (finding "fiduciary" status because complaint alleged defendant "determined which creditors the [corporate defendant]

would pay," "exercised control over money due and owing to the Plaintiff Funds," and failed to remit employer contributions under his control). The plaintiffs allege that Ms. Gonzalez "exercises authority and control over the pension plan asset… its right to payment of the debt that Queens Village owed the pension plan," "has the authority to determine and control… whether and under what circumstances Queens Village… would manage or dispel of the plan asset" and controls which of Queens Village's creditors get paid and in what order. (Compl. ¶¶ 25-29.) At this stage, these assertions are sufficient to allege that Ms. Gonzalez is a Pension Plan fiduciary. *See LoPresti v. Terwilliger,* 126 F.3d 34, 40 (2d Cir. 1997) ("Of equal if not more import… is that, as the district court found, [the defendant] had 'a role in determining which bills to pay,' in that he decided which creditors were to be paid out of the Company's general account (which… included employee Fund contributions), and when those creditors were to be paid."); *Trustees of the New York City Dist. Council of Carpenters Pension Fund v. Metro. Enterprises, Inc.,* No. 16-CV-284, 2016 WL 5334982, at *7 (S.D.N.Y. Sept. 22, 2016) ("Numerous courts have held similar allegations sufficient to survive a motion to dismiss on breach of fiduciary duty claims." (collecting cases)).

Ms. Brinn and Ms. Ruiz are in different positions than Ms. Gonzalez. The plaintiffs conclude that Ms. Brinn and Ms. Ruiz are "fiduciaries" because they are officers of Queens Village and filled out annual Form 5500 SFs. However, the plaintiffs do not assert, as they did with Ms. Gonzalez, that Ms. Brinn or Ms. Ruiz could "determine which of Queen's Village's creditors would be paid and in what order." (*See* Compl. ¶ 28.) Nor do the plaintiffs claim that Ms. Brinn or Ms. Ruiz had authority or control to manage the plan's assets, or that any Pension Plan document or term gave Ms. Brinn or Ms. Ruiz authority such that they would be considered fiduciaries. The authority to fill out and sign annual forms is not the same as "discretionary

11

authority or discretionary control respecting management" of plan assets or respecting "administration" of the plan. *See Finkel*, 577 F.3d at 86 ("Accepting all of the Joint Board's allegations in this case as true and drawing all inferences in its favor, we conclude that Romanowicz was simply an officer of Whiffen, that he signed checks on the company's behalf, and that he and Whiffen 'maintained' plan assets 'for the benefit of [Romanowicz and Whiffen].'"); *see also LoPresti*, 126 F.3d at 40 (distinguishing defendants as fiduciaries based on whether they had the responsibility to determine "which of the company's creditors would be paid or in what order").

The plaintiffs base their fiduciary argument on their conclusory allegation that Ms. Brinn and Ms. Ruiz "concealed" information on the Form 5500 SFs. (*See* Compl. ¶¶ 34-39.) But filling out a form at the end of the year is not the same thing as managing "the Pension Plan's right to payment of the company debt and... control[ing] its disposition." (*Cf.* ECF No. 46 at 20.)[7] Even if Ms. Brinn and Ms. Ruiz purposefully misrepresented information on a Form 5500 SF, that still would not amount to "discretionary authority or discretionary control" of the Pension Plan. *See Allen*, 895 F.3d at 225 ("Insofar as plaintiffs rely on allegations of fraud in defendants' conduct... to support their fiduciary claims, this court, as well as sister circuits, have

---

[7] The plaintiffs do not cite any case – in this Circuit or any other – in which a court assigned ERISA fiduciary status simply because a person served as an officer of the plan sponsor and concealed information on an annual form or report to the federal government, and the cases the plaintiffs do cite are distinguishable. (*See* ECF No. 46 at 18-21 (citing *Chao v. Day*, 436 F.3d 234, 237–38 (D.C. Cir. 2006) ("We hasten to emphasize the limited scope of today's holding. Our interpretation of the disposition clause does not—as Day fears—extend fiduciary status to every person who exercises "mere possession, or custody" over the plans' assets. Day was far more than a mere custodian; he was a broker who solicited, accepted, and then pilfered the plans' assets by reneging on his promise to purchase insurance for the plans' members. On the facts presented here, we hold simply that Day exercised sufficient "authority or control" over the "disposition" of the plans' assets to qualify as a "fiduciary" under the disposition clause."); *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1420-21 (9th Cir. 1997) (finding defendant "may be a fiduciary" because it "involved plan interpretation and judgment" and "controlled the money in the plan's bank account")).)

held that wrongdoing in performing non-fiduciary services does not transform the alleged wrongdoer into a fiduciary.") (collecting cases). While the alleged conduct may expose the defendants to liability under some other legal theory, the conduct alleged does not suffice to make Ms. Brinn and Ms. Ruiz "fiduciaries" as defined in ERISA.

Accordingly, the complaint does not state facts from which this Court can conclude that Ms. Brinn and Ms. Ruiz are "fiduciaries" within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A), and the claims against them are dismissed. *See Geller v. Cty. Line Auto Sales, Inc.*, 86 F.3d 18, 21 (2d Cir. 1996) ("Because the complaint fails to allege facts sufficient to support an inference that any of the defendants is a plan fiduciary, no liability can attach to them under § 1132(a)(2).").

*Statute of Limitations*

I next consider whether the statute of limitations bars the plaintiffs' claims against Ms. Gonzalez and Queens Village for unpaid contributions for the 2008 to 2010 plan years. The defendants argue that the six-year statute of limitation bars the plaintiffs' claims for those years because the last conduct giving rise to the alleged breach occurred on April 15, 2012, more than six years before the plaintiffs filed their complaint. The plaintiffs respond that the six-year statute of limitations was tolled because the defendants' repeated failures to collect contributions was an ongoing breach of fiduciary duty, and because the defendants concealed the amount of contributions Queens Village owed the Pension Plan on the Form 5500 SFs for the 2008-2010 plan years.

ERISA has three alternative limitations periods. *See* 29 U.S.C. § 1113.[8] The first, a six-year period starting from the last action that was part of the breach, applies in the absence of any

---

[8] "No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier

special circumstances.[9] *Janese v. Fay*, 692 F.3d 221, 227-28 (2d Cir. 2012); 29 U.S.C.

§ 1113(1). The second is a three-year period, which applies when a plaintiff has "actual

knowledge" of a violation, defined as "knowledge of all material facts necessary to understand

that an ERISA fiduciary has breached his or her duty or otherwise violated the Act." *Janese*, 692

F.3d at 227-28 (quoting *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001)); 29 U.S.C.

§ 1113(2).[10] The third period is also six years, and applies when the plaintiff alleges fraud or

---

of— (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation."

[9] The plaintiffs rely on *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1825 (2015) to argue that so long as the "last 'act or mission' alleged to be part of the breach of duty" occurred "within six years of filing suit," the suit is timely pursuant to § 1113(1). (ECF No. 46 at 6 (citing *Tibble*, 135 S. Ct. at 1829).) However, *Tibble* held that in the context of an ongoing fiduciary duty – the duty to monitor the plan's investments and assets – a breach of fiduciary duty claim is timely "so long as the alleged breach of the continuing duty occurred within six years of suit." 135 S. Ct. at 1829. Courts in this Circuit have not applied *Tibble* outside of the "duty to monitor" context. *See, e.g., O'Day v. Chatila*, No. 18-CV-2621, 2019 WL 2404660, at *2 (2d Cir. June 7, 2019) (pursuant to *Tibble*, failure to monitor claim "requires Defendants both to have improperly monitored investments and to have failed to remove imprudent ones"); *Kim v. Hartford Life Insurance Company*, No. 15-CV-2474, 2017 WL 2589303, at *3 (E.D.N.Y. June 14, 2017), *aff'd*, 748 F. App'x 371 (2d Cir. 2018) (limiting *Tibble* to fiduciary duty claims involving the monitoring of investments); *In re SunEdison, Inc. ERISA Litig.*, 331 F. Supp. 3d 101, 114 (S.D.N.Y. 2018) (discussing limited application of *Tibble*); *In re Lehman Bros. Sec. & ERISA Litig.*, 113 F. Supp. 3d 745, 757 (S.D.N.Y. 2015) ("It is true of course, as *Tibble* reminds us, that ERISA fiduciaries bear a 'continuous duty' to monitor the prudence of investments."). Here, the plaintiffs do not make a "duty to monitor" claim. Rather, they allege that the defendants had an ongoing duty to "enforce the plan's right to payment of the debt owed to the plan." (ECF No. 46 at 6.)

[10] According to the defendants, the three-year limitations period applies because the plaintiffs had "actual knowledge" of Queens Village's failure to collect 2008-2010 employer contributions by January 28, 2013, at the latest, when the Pension Plan's publicly-filed Form 5500 SFs disclosed that no employer contributions were made for each plan year. (ECF No. 34-1 at 17-22.) The defendants have not met their burden of showing that the three-year limitations period applies. The facts in the amended complaint establish, at most, that the plaintiffs had constructive knowledge of a breach based on the Form 5500 SFs, which is "insignificant to trigger the three-year statute of limitations." *See Caputo*, 267 F.3d at 193 ("Although the announcement should have (and did) give plaintiffs reason to suspect that Pfizer had lied to them, 'it is not enough that [plaintiffs] had notice that something was awry; [plaintiffs] must have had specific knowledge of the actual breach of duty upon which [they sued].'" (quoting *Brock v. Nellis*, 809 F.2d 753, 755 (11th Cir. 1987))). "Constructive knowledge" of a breach does not trigger the three-year period. *Caputo*, 267 F.3d at 194. The Form 5500 SFs merely disclosed that no employer contributions had been made the previous year and that Queens Village reported having no debt, which is not enough to alert the plaintiffs that the statements on the forms were "untruthful at the time they were made" or that

concealment with the requisite particularity. *Janese*, 692 F.3d at 228; 29 U.S.C. § 1113(2). The latter six-year period is tolled until the plaintiffs discover, or "should with reasonable diligence have discovered," the breach. *Janese*, 692 F.3d at 228 (citing *Caputo*, 267 F.3d at 190).

The statute of limitations is an affirmative defense, which means that the defendants have the burden of showing that the plaintiffs' claims are not timely. *See Caufield v. Colgate-Palmolive Co.*, No. 16-CV-4170, 2017 WL 744600, at *4 (S.D.N.Y. Feb. 24, 2017) (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("The lapse of a limitations period is an affirmative defense that a defendant must plead and prove.")). Dismissal based on an affirmative defense at the complaint stage is warranted only if "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Caufield*, 2017 WL 744600, at *4 (citing *Staehr*, 547 F.3d at 426).

The plaintiffs base their breach of fiduciary duty claims on two different theories.[11] The first theory is that Ms. Gonzalez and Queens Village breached their fiduciary duties by failing to enforce the Pension Plan's right to payment. Because there is no allegation of fraud or concealment related to this theory, and no allegation of special circumstances, the statute of limitations period that applies to this theory is six years from the date of the last action that was

---

"material information known to [Queens Village] was withheld." *See Caputo*, 267 F.3d at 190, 194. Therefore, I do not find that the plaintiffs had actual knowledge that the defendants breached a fiduciary duty and the 29 U.S.C. § 1113(2) 3-year statute of limitations does not apply.

[11] The plaintiffs' claims are somewhat duplicative, though they are asserted under different sections of ERISA. Their first claim, under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), alleges that Ms. Gonzalez and Queens Village breached their fiduciary duties by failing to enforce the Pension Plans right to payment, and also that Queens Village concealed the failure to make payments on the Plan's Form 5500 SFs. (Compl ¶¶ 114-16.) The plaintiffs' second claim, under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), asserts that Ms. Gonzalez and Queens Village breached their fiduciary duties by failing to enforce the Pension Plans right to payment. (Compl. ¶¶ 120-21.)

part of the breach. *See, e.g., Demopoulos v. Anchor Tank Lines, LLC,* 117 F. Supp. 3d 499, 509 (S.D.N.Y. 2015) (applying six-year period in 29 U.S.C. § 1113(1) because "This is not a case of fraud because the alleged breach arose from the nonpayment of amounts due to the Funds, and not any misrepresentation or omission made to employees or beneficiaries."). The plaintiffs' second theory of liability is that Queens Village concealed its failure to make payments on the Pension Plan's Form 5500 SFs. (Compl ¶¶ 114-16.) Because the latter theory is based on an assertion that Queens Village misrepresented a matter of fact, the "fraud or concealment" exception to the statute of limitations applies to their claims and the six-year period is tolled until the plaintiffs could have reasonably discovered the breach. *See Caputo,* 267 F.3d at 190.

### 1. The Failure to Pay Claims

The plaintiffs argue that their claims for the 2008-2010 plan years were timely when the complaint was filed in May 2018 because the defendants' breach began in 2008 and the claim did not accrue until 2016, when Queens Village said it would not pay the outstanding contributions. The defendants respond that the plaintiffs' claims for unpaid contributions in 2008 to 2010 accrued on April 15, 2012, when Queens Village's contribution for the 2010 plan year was due.

As discussed above, the six-year statute of limitations applies to the plaintiffs' first theory of breach of fiduciary duty — that Ms. Gonzalez and Queens Village did not enforce the Pension Plan's right to contributions. *See Demopoulos,* 117 F. Supp. 3d at 509. ERISA Section 1113(1)(A) directs that a claim for a breach of a fiduciary duty must be brought within six years of "the date of the last action which constituted a part of the breach or violation." *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc.,* 558 F. Supp. 2d 378, 405 (E.D.N.Y. 2008), *aff'd,* 710 F.3d 57 (2d Cir. 2013).

The plaintiffs argue that I should apply the "continuing violation doctrine" as described in *L.I. Head Start*, 558 F. Supp. 2d at 400 (collecting cases):[12] "[A] new cause of action accrues for each violation where separate violations of the same type, or character, are repeated over time." The continuing violation doctrine applies to cases of "repeated decision-making, of the same character, by the fiduciaries." *See id.*; *Novella*, 661 F.3d at 146. Here, the plaintiffs sufficiently alleged that fiduciary Queens Village made the same decision — not to pay contributions to the Pension Plan — for each of the 2008 through 2016 plan years. Therefore, I find that the continuing violation doctrine applies to the plaintiffs' breach of fiduciary duty claims arising from the 2008 to 2010 plan years, and they are not barred by the statute of limitations. *See L.I. Head Start*, 558 F. Supp. 2d at 401-402, 405 (holding the plaintiffs' claims that defendants failed to fund the plan were within the six-year limitations period and not barred by the statute of limitations); *Bona v. Barasch*, No. 01-CV-2289, 2003 WL 1395932, at *19 (S.D.N.Y. Mar. 20, 2003) (dismissing claims resulting from contract entered more than six years before the complaint, but not the contract renewals that came after because defendants had a continuing duty to review plan investments and "that duty was violated each time defendants renewed imprudent contracts with fund administrators").

---

[12] While the Second Circuit has acknowledged that the doctrine should be applied in certain ERISA cases, *see, e.g.*, *Novella v. Westchester Cty.*, 661 F.3d 128, 146 (2d Cir. 2011), I am not aware of a factually similar case where it has actually been applied. In *Novella*, the Court expressly did not adopt the continuing-violation theory: "We think that method is appropriate in ERISA cases, as elsewhere, only 'where separate violations of the same type, or character, are repeated over time.'" *Id.* (citing *L.I. Head Start*, 558 F.Supp.2d at 400). The Court explained that "Usually, '[t]hese cases are marked by repeated decision-making, of the same character, by the fiduciaries.' But it is not as clear a fit in cases where, as here, 'the plaintiff['s] claims are based on a single decision that results in lasting negative effects.'" *Novella*, 661 F.3d at 146. The facts of this case are more akin to the first category because of the allegations of the fiduciaries' repeated decisions not to contribute money to the Pension Plan.

## 2. The Concealment Claim

The plaintiffs argue that their breach of fiduciary duty claims based on fraud for the 2008 to 2010 plan years are timely because the Queens Village defendants concealed Queens Village's failure to make Pension Plan contributions by misrepresenting information on the Form 5500 SFs each year for the 2008 to 2016 plan years. Queens Village denies that they concealed or misrepresented information on the Form 5500 SFs, and assert that the plaintiffs' claims accrued on April 15, 2012.

The "fraud or concealment exception" requires the plaintiffs to allege that a fiduciary either "(1) breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment; or (2) engaged in acts to hinder the discovery of a breach of fiduciary duty." *Caputo*, 267 F.3d at 190. The plaintiffs must state these allegations "with particularity," meaning that the plaintiffs must "specify the time, place, speaker, and content of the alleged misrepresentations," "how the misrepresentations were fraudulent," and "those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Janese*, 692 F.3d at 228 (citing Fed. R. Civ. P. 9(b) and *Caputo*, 267 F.3d at 191). To allege concealment, the plaintiffs must also plead facts giving rise to a duty to disclose the relevant information. *In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655, 675 (S.D.N.Y. 2018). While it is the defendants' burden to prove the statute of limitations bars the plaintiffs' claims, the plaintiffs must prove that tolling is appropriate. *Demopoulos*, 117 F. Supp. 3d at 511 (citing *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)).

The plaintiffs assert that on each annual Form 5500 SF, Queens Village included only the contribution amount it owed for that year and did not add in the unpaid amount from the

previous year. As discussed *infra*, it is not clear that the plaintiffs have standing to assert a breach of fiduciary duty claim based on misrepresentations in a Form 5500 SF because, to the extent that Queens Village owed a duty to fill out the Form 5500 SF truthfully, that duty was owed to the government and not to the plaintiffs. However, assuming for the purposes of this analysis that the plaintiffs do have standing, there are still too many questions of fact surrounding this claim to resolve it at the pleading stage.[13] *See Janese*, 692 F.3d at 228-29 (resolution of "issue of fact" as to knowledge of fraud "was not proper at the pleading stage"). Drawing all reasonable inferences in the plaintiffs' favor, as I must at this stage, I find that the amended complaint adequately alleges the fraud or concealment exception to the ERISA six-year statute of limitations. *See also Frulla v. CRA Holdings, Inc.*, 596 F. Supp. 2d 275, 288 (D. Conn. 2009) (plaintiff adequately pled concealment exception by asserting defendants took affirmative steps to hinder discovery of breaches of fiduciary duty including by furnishing inaccurate Form 5500 filings to participants).

There are also open questions about when the plaintiffs discovered or should have discovered the alleged breach of fiduciary duty. *See* 29 U.S.C. § 1113(2); *Janese*, 692 F.3d at 228 (citing *Caputo*, 267 F.3d at 190). The amended complaint does not plead facts from which I can determine when the plaintiffs first knew or should have known about Queens Village's concealment, but I draw the inference in the plaintiffs' favor and deny the defendants' motion to dismiss at this stage.

---

[13] For example, it remains an open question whether the plaintiffs, in exercising their due diligence and reviewing other Pension Plan documents aside from the Form 5500 SFs, were on notice that Queens Village was not making its required contributions.

*Claim Against Principal*

The plaintiffs' claim against Principal is essentially that Principal knew that Queens Village did not make all or most of its required contributions for the 2008 to 2016 plan years and did nothing about it. (*See* Compl. ¶¶ 87, 125.) The plaintiffs allege that Principal should have informed the Queens Village Board of Directors and the Department of Labor, or that they should have brought a civil action against Queens Village to recover the unpaid contributions. (Compl. ¶¶ 12, 89-90, 128.) Principal moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the claim against it, arguing that 1) it did not have a fiduciary duty to ensure that Queens Village made adequate contributions to the Pension Plan and 2) that it should not be held liable as a co-fiduciary because the plaintiffs have not "plausibly alleged" the factors of a co-fiduciary liability claim. (ECF No. 33-1.)

Pursuant to ERISA § 405(a), 29 U.S.C.A. § 1105(a)(3), "a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary… if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." *See also Silverman v. Mut. Ben. Life Ins. Co.*, 138 F.3d 98, 104 (2d Cir. 1998) (granting summary judgment to Principal because plaintiff did not show the fund's loss "resulted from Principal's inaction," but issues of fact remained as to the knowledge and reasonable efforts elements and "a reasonable factfinder could conclude that… Principal had knowledge of the trustees' breach").

The parties disagree about whether Principal is a fiduciary. The plaintiffs allege that Principal is a fiduciary because Queens Village's contributions are sent to and held by Principal as the Pension Plan trustee, and because Principal is "responsible for allocating" contributions into participants' accounts and investment vehicles. (Compl. ¶¶ 41, 86.) The defendants say that

20

Principal is merely a "directed trustee" of the Pension Plan and has narrow fiduciary duties that are not implicated by the allegations in the amended complaint. (ECF No. 33-1 at 9-13.) However, courts in this district have held that a directed trustee is an ERISA fiduciary, and the Department of Labor has advised that a "trustee... will, by definition, always be a 'fiduciary' under ERISA as a result of its authority or control over plan assets." *In re WorldCom, Inc. ERISA Litig.*, 354 F. Supp. 2d 423, 444 (S.D.N.Y. 2005) (citing U.S. Department of Labor, Field Assistance Bulletin 2004–03 (Dec. 17, 2004)) (collecting cases). The defendants are correct that a directed trustee's duties or discretion may be expressly limited by contract and the plaintiffs have not pled that Principal had or exercised "discretion in a way that is inconsistent with its status as a directed trustee." *See In re WorldCom,* 354 F. Supp. 2d at 442-43 (holding Merrill Lynch was a directed trustee and ERISA fiduciary). It is also true that Principal is a fiduciary to the Pension Plan "only 'to the extent' [it] functions as a fiduciary" and "the fiduciary obligations of directed trustees are circumscribed by the parameters of their duties pursuant to Section 403(a)." *Id.* at 444-45 (citing 29 U.S.C. § 1002(21)(A), 1103(a)); *see also Mahoney v. JJ Weiser & Co.,* 339 F. App'x 46, 48 (2d Cir. 2009) ("Our case law makes clear that "a person may be an ERISA fiduciary with respect to certain matters but not others, for he has that status only 'to the extent' that he has or exercises the described authority or responsibility." (internal citations omitted)); *F.W. Webb Co. v. State St. Bank & Tr. Co.*, No. 09-CV-1241, 2010 WL 3219284, at *13 (S.D.N.Y. Aug. 12, 2010) ("Under ERISA, however, a fiduciary is only liable for conduct that falls within the scope of its fiduciary authority."). At this stage, without the benefit of discovery,[14] I am unable to determine the precise boundaries of Principal's fiduciary duties as a directed trustee and must draw the inference in favor of the plaintiffs.

---

[14] Principal submits Directed Trust Agreements with Queens Village from various years. (ECF No. 33-2.) Though these documents may ultimately absolve Principal of co-fiduciary liability, they are not

Assuming that Principal is a fiduciary, the plaintiffs have pled enough facts to state a *prima facie* claim that Principal knew that Queens Village breached its fiduciary duty when it did not pay the required contributions. The plaintiffs allege that Principal attended a meeting where it was informed that Queens Village was not planning to pay the contributions it owed to the Pension Plan, and that a Principal representative told the Queens Village defendants that it needed to do so. The plaintiffs are not required to prove conclusively that Principal had "actual knowledge" that Queens Village breached its fiduciary duty; rather, their allegations that Principal had constructive knowledge of a breach and did not take reasonable steps to remedy that breach are sufficient to overcome a motion to dismiss. *See In re Polaroid ERISA Litig.,* 362 F. Supp. 2d 461, 479-80 (S.D.N.Y. 2005) ("Defendants argue that the Complaint does not sufficiently allege knowledge of co-fiduciary actions. However, the Complaint closely tracks the statutory language, which is sufficient... The Complaint need not allege specific facts buttressing those claims of knowledge to survive a motion to dismiss."); *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.,* 712 F.3d 705, 727 (2d Cir. 2013) ("A complaint alleging a breach of fiduciary duties under ERISA may survive a motion to dismiss based solely on circumstantial factual allegations... when those allegations give rise to a 'reasonable inference' that the defendant committed the alleged misconduct... thus 'permit[ting] the court to infer more than the mere possibility of misconduct.'" (quoting *Iqbal,* 556 U.S. at 678)). Accordingly, Principal's motion to dismiss is denied.

---

mentioned in the amended complaint, and the plaintiffs did not rely on them in drafting the amended complaint, so I cannot consider them on a motion to dismiss. *See Cortec Indus,* 949 F.2d at 47; *Williams v. Time Warner,* 440 F. App'x at 9; *Chambers v. Time Warner,* 282 F.3d at 153.

## ORDER TO SHOW CAUSE

To the extent the plaintiffs' claims against Queens Village are premised on "concealment" in the Pension Plan's annual Form 5500 SFs, the plaintiffs must establish that they have standing to bring such claims. ERISA contains "two express causes of action to remedy reporting and disclosure violations" — §§ 502(a)(1)(A), 502(a)(4) — and "neither provision provides a private remedy" to plaintiffs. *Jacobs v. Verizon Commc'ns, Inc.*, No. 16-CV-1082, 2017 WL 8809714, at *13 (S.D.N.Y. Sept. 28, 2017). It is not clear that the plaintiffs, who are Pension Plan participants, have standing to assert an ERISA breach of fiduciary duty claim based on Queens Village's statements in a Form 5500 SF. *See Jacobs*, 2017 WL 8809714, at *14 ("Although the Second Circuit has not ruled on this issue, lower courts have found that an ERISA plan participant lacks standing to assert a claim based on an alleged misrepresentation in a Form 5500.") (collecting cases).

While the Second Circuit has not ruled on this issue, *see id.*, the Third Circuit has "repeatedly held that under ordinary circumstances defects in fulfilling the reporting and disclosure requirements of ERISA do not give rise to a substantive remedy other than that provided for in section 502(a)(1)(A) of that Act." *In re Ins. Brokerage Antitrust Litig.*, No. 04-CV-5184, 2008 WL 141498, at *7 (D.N.J. Jan. 14, 2008) (collecting cases). The Seventh Circuit has also declined to find a private right of action based on ERISA reporting requirements. *See Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 539-40 (7th Cir. 1991). The plaintiffs have not cited any cases in which a court held that a defendant who filled out a Form 5500 SF improperly violated a fiduciary duty *owed to the plaintiff* under ERISA. The plaintiffs have not demonstrated how they relied on any material misrepresentation by Queens Village such that they were injured, nor have they cited any caselaw supporting their breach of fiduciary duty

theory based on concealment underlying their first and second claims. *See Jacobs*, 2017 WL 8809714, at \*15 (holding plaintiff did not assert reliance, just "deprivation of information" and "[N]o court in this circuit has ever found that a plaintiff successfully pled informational standing." (internal citations omitted)); *In re Ins. Brokerage Antitrust Litig.*, 2008 WL 141498, at \*7 ("Even if Plaintiffs are able to demonstrate that Defendants purposely mislead them in inaccurately filling out Form 5500s, Plaintiffs utterly fail to demonstrate that they relied on this misrepresentation and were substantively harmed.").

Accordingly, the plaintiffs are ORDERED TO SHOW CAUSE, within 30 days, as to why their concealment-based breach of fiduciary duty claims against Queens Village should not be dismissed for failure to state a claim upon which relief may be granted. The plaintiffs should include citations to relevant caselaw, whether in this Circuit or in others, supporting their claims.

## CONCLUSION

The Queens Village defendants' motion to dismiss is granted insofar as the claims against individual defendants Ms. Ruiz and Ms. Brinn are dismissed for failure to state a claim. Their motion is otherwise denied. Principal's motion to dismiss is also denied.

**SO ORDERED.**

s/Ann M. Donnelly

Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
   September 16, 2019